**U.S COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| **Nawal Ali** | ) |
|     **Plaintiff/Appellant,** | ) |
| | ) |
| **vs.** | )   **Case No: 23-1470** |
| **BC Architects Engineers PLC** | ) |
|     **Defendant/Appellee.** | ) |

**<u>Appellant's Response/Opposition to Defendant's Motion for Sanctions.</u>**

The Defendant/Appellee BC Architects Engineers PLC (BC) motion for sanctions under 28 U.S.C. §1927 for the filing of our <u>notice of appeal</u> must be denied. Putting aside that other than a one paragraph notice of appeal, there has been no other filings on our part in this Court, (other than our oppositions to BC's motions)[1] the issue of appealability under §1291 is not based on any outstanding issue of attorney's fees and costs. BC contends that insofar as an Order on the issue of attorney's fees and costs is still to be decided by the District court, there is no final appealable order. Twice our Supreme Court has rejected this contention.

In *Budinich v. Becton Dickinson & Co,* 486 U.S 196 (1988) the Supreme Court made the distinction between the merits of a claim, and attorney's fees and

---

[1] We did most recently file a motion to extend the deadline to file our briefs. This motion was granted by this Court. Our briefs are now due in December 2023.

costs. The former is immediately appealable, even if there is a pending decision on the costs. The Supreme Court held:

> As a general matter, at least, we think it **indisputable** that a claim for <u>attorney's fees is not part of the merits of the action</u> to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action. <u>At common law, attorney's fees were regarded as an element of "costs"</u> awarded to the prevailing party, see 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil § 2665 (1983), <u>which are not generally treated as part of the merits judgment</u>, cf. Fed. Rule Civ. Proc. 58 ("Entry of the judgment shall not be delayed for the taxing of costs"). Many federal statutes providing for attorney's fees continue to specify that they are to be taxed and collected as "costs[….] <u>we conclude that the § 1291 effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law that authorizes them</u>. (emphasis added.)

486 U.S at 200-01.

Even when BC submitted its requests for $67,000 in attorney's fees, it styled its header on its brief as one for "<u>costs</u>."

**BC ARCHITECTS' REQUEST FOR**
**ATTORNEYS' FEES AND**
**COSTS PURSUANT TO 28 U.S.C. § 1927**

(ECF 118: Ex. **A**[2])

We relied on BC's representations to the District Court in its brief for "costs," and our understanding of *Budinich* to file our timely notice of appeal.

In *Budinich, supra,* the petitioner contended that his appeal was timely, since he filed his notice of appeal when the decision on "costs" had been issued. The

---

[2] Only the first page of BC's Brief is being provided.

Supreme Court in affirming the Tenth Circuit rejected that argument, and deemed that petitioner's appeal after the decision on costs was issued, was untimely. *See also S. All. for Clean Energy v. Duke Energy Carolinas, LLC*, 650 F.3d 401, 405-06 (4th Cir. 2011) ("Duke Energy asks us to revisit the district court's merits determinations solely for the purpose of setting aside the district court's attorneys' fee award. Fee determinations are generally distinct from merits determinations. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988). Indeed, it has been recognized that a merits determination on which a fee award is based generally cannot be revisited on appeal from the fee award."). *See also Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs*, 571 U.S. 177, 179 (2014) ("Whether the claim for attorney's fees is based on a statute, a contract, or both, the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final for purposes of appeal.") (emphasis added.)

In our case, as soon as the District Court issued its merits decision on the issue of sanctions on March 31, 2023, we filed our timely notice of appeal within 30-days under Appellate Rule 4, or by April 30, 2023. *See Wagner v. Iames*, Civil Action No. ELH-16-98, 2018 U.S. Dist. LEXIS 107344, at *18 (D. Md. June 26, 2018) ("The timely filing of a notice of appeal in a civil case is a jurisdictional

requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); [also citing to] *Budinich*, 486 U.S. 203).

BC also <u>does not</u> contend that our April 30, notice of appeal was untimely; they simply maintain that insofar as the decision on "costs" is still pending, the decision is not final. BC's position is contrary to the holding in *Budinich, supra, Clean Energy, supra,* and *Ray Haluch Gravel Co., supra.*

We relied on *Budinich, supra* to file our timely appeal.

**<u>There is no bad faith.</u>**

Finally, we are perplexed how BC even arrived at the conclusion that there is evidence of "bad faith" in this matter, a prerequisite for sanctions under 28 U.S.C §1927. *See Thomas v. Ford Motor Co.,* 244 F. App'x 535, 539 (4th Cir. 2007) ("In our view, § 1927 provides no basis for the sanctions imposed by the district court because it is triggered by subjective bad faith. [internal cite omitted.]. *See also Hilton Hotels Corp. v. Banov*, 283 U.S. App. D.C. 232, 899 F.2d 40, 45 n.9 (D.C. Cir. 1990) ("Section 1927 applies only when the attorney acts in *subjective bad faith*. As stated above, there is no evidence of subjective bad faith on the part of either attorney.")

As evidenced by the email exchange between counsel, we were agreeable to a stay in the action, pending the decision on costs (Ex. **B** pg. 1). BC rejected it and filed a motion to dismiss and sanctions – this after BC also agreed to a second

round of mediation on September 6, 2023. Filing frivolous motions for sanctions is also BC's *modus operandi*. BC sought their <u>full</u> attorneys fees of approximately $300,000 (ECF 84) as part of their request for sanctions, for every single filing made by us, even when case law from the Fourth Circuit does not support it. *See Debauchi v. Trani,* 191 F.3d 499, 511-12 (4th Cir. 1999) ("Debauche's attorneys filed only two documents, a complaint and an amended complaint […] We conclude <u>as a matter of law</u> that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore §1927 cannot be employed to impose sanctions.") (emphasis added.)

Below is a quick summary of their success to date.

| BC's §1927 Sanctions Sought | BC's §1927 Sanctions Granted/Denied |
|---|---|
| Ali's filings at the US Equal Employment Opportunity Commission (EEOC) | Denied |
| Ali's filing of her Complaint (ECF 1) | Denied |
| Ali's filing of her First Amended Complaint (ECF 13) | Denied |
| Ali's filing of her Opposition to BC's R.12 motion to dismiss (ECF 23) | Denied |
| Ali's filing of the appeal, Case No. 19-1582 | Denied |
| Ali's filing of the Second Amended Complaint (ECF 50)[3] | Denied |
| Ali's filing of the Opposition to BC's R.56 motion for summary judgement (ECF 76). | Granted. |

---

[3] The Second Amended Complaint was filed at the request of BC Architects. We never intended to file a second amended complaint.

Page **5** of 11

They also sought sanctions for the filing of our <u>opposition</u> to *their* motion for summary judgment. In ordering sanctions under §1927, BC and the District Court concluded that Ali was a "lazy good for nothing," who deserved to be fired. And because Ali was a "lazy good for nothing," we needlessly extended the proceedings under §1927, when we filed our opposition to BC's R.56 motion. That is it. In practice, the justification for the sanctions is because Ali did not convince BC and the District Court that her termination was pre-textual. In practice, this also means that henceforth <u>all</u> claims and oppositions to a motion for summary judgment, that fail to show pre-text are <u>automatically</u> subject to sanctions under §1927. Nothing in the case law, the history of the civil rights act or Title VII authorizes this. *See Debauchi, supra;* and *EEOC v. Great Steaks Inc., infra.*

Moreover, the District Court in its Order for sanctions under §1927 failed to even mention that Ali was fired 8-days after her March 30, 2016 protected activity, when her job was posted on April 7 (Ex. **C**); and prior to her protected activity, claims by the Defendant that Ali was a "lazy good for nothing" did not exist in the record. The District Court also never cited to the Defendant's admission that they had "forgotten" they had a progressive discipline policy, and then also admitted that when they fired the "lazy good for nothing Ali," BC did not follow their progressive discipline policy

> Q: So now that you know you had one [a progressive discipline policy] you [would] have placed her on a performance improvement plan?
> A: Yes. (Quinn Dep: 29:8-11).[4]

This cannot be the basis for sanctions under §1927. *See Hudson v. Int'l Comput. Negotiations, Inc.*, 499 F.3d 1252, 1265 (11th Cir. 2007) (sanctions under § 1927 were denied despite employer criticism of the employee <u>for months</u> of various performance issues.[5] In *Hudson*, the employee was then terminated nine weeks after he disclosed his medical illness and eight days[6] after his request for long term disability. In regard to the eight days, the Seventh Circuit held, "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."[7] In affirming the

---

[4] If BC were agreeable to placing Ali on a PIP the objective of which is to improve her performance, it also means that Ali cannot be a "lazy good for nothing." Only hardworking and diligent employees improve or exceed job performances. Clearly by agreeing to place Ali on a PIP, BC believed or had full confidence that Ali's performance would improve.

[5] In Ali it was not for months; all of the employer's criticism of her "laziness" and "lack of productivity" arose immediately after her March 30, 2016 protected activity. Her job was posted 8-days later. See our exhibits on this to our opposition to the motion to dismiss.

[6] Ali's job was also posted eight days after her protected activity.

[7] Even this Circuit has concluded that close proximity is evidence of retaliation. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) ("We have made abundantly clear that temporal proximity suffices to show a causal relationship.").

denial of § 1927 sanctions, it went on to hold that, "while Hudson's case was weak, it was <u>not so without circumstantial foundation</u> as to render it frivolous[.]") (emphasis added.) *See also EEOC v. Great Steaks Inc*. 667 F.3d 510, 522 (4th Cir. 2012) ("Great Steaks' first contention concerning the <u>weaknesses</u> of the EEOC's case does not fall within the purview of § 1927, which focuses on the conduct of the litigation and <u>not on its merits</u>.")

When in here BC also admitted that it failed to follow its documented policies when they terminated Ali, 8-days after her protected activity, it is evidence of retaliation. *See Southwestern Bell Tel. Co. v. Garza*, 58 S.W.3d 214, 229 (Tex. App. Corpus Christi 2001) (The court of appeals affirmed a verdict for the plaintiff of more than $1,00,000.00, and stated that "[t]he jury heard evidence relating to Southwestern Bell's inexplicable failure to adhere to its own documented policies."); *Smith v. Xerox Corp*., 371 Fed. Appx. 514, 517 (5th Cir. Mar. 2010). (Affirming jury verdict in retaliation claim, in part, because, "Xerox's policies generally state that counseling and coaching of employees should occur prior to the issuance of formal warning letters, yet Xerox offered no documentation supporting Jankowski's claim that he counseled Smith before placing her on probation."); *Westmoreland* v. *TWC Admin. LLC* 924 F.3d, 718, 728 (4th Cir. 2019) (In upholding a $334,500 jury verdict, the Court held, "They further agreed that company policy permitted TWC to impose other, less severe sanctions for

Westmoreland's alteration of the one-on-one report. In light of this testimony, the jury could reasonably have questioned whether firing Westmoreland for one infraction that did not require termination was such an extreme overreaction as to be pretextual."); *Johnson v. Lehman,* 679 F.2d 918, 922 (D.C. Cir. 1982) (departure from procedure "may [be] deem[ed] probative . . .."); *Brennan v. GTE Gof't Sys. Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) (noting that deviation from established policy or practice may be evidence of pretext); *Hilde v. City of Eveleth*, 777 F.3d 998, 1007 (8th Cir. 2015) (failure to follow policies particularly compelling "when the departure affects only the affected candidate"); *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (pretext may be shown where employer failed to follow its own policies); *Stern v. Trustees of Columbia University*, 131 F. 3d305, 313 (2d Cir. 1997) ("**departures from procedural regularity ... can raise a question as to the good faith of the process** where departure may reasonably affect the decision.") (emphasis added); *Goudeau v. Nat'l Oilwell Varco, L.P.,* 793 F.3d 470, 477 (5th Cir. 2015) [citing to] *Russell*, 235 F.3d at 224 (holding that evidence that plaintiff "was not given a formal oral warning, a written warning, or a 'corrective action plan,' all of which are required by [the employer's] own internal procedures" prior to being terminated, among other evidence, was sufficient to create jury issue on pretext); *Laxton v. Gap Inc.,* 333 F.3d 572, 581 (5th Cir. 2003) (holding, in a Title VII pregnancy discrimination

case, that evidence was sufficient to create jury issue on pretext when, among other things, plaintiff's "supervisors never gave [the plaintiff] the chance to explain her conduct or improve it" prior to terminating her and noting that "[h]ad [the employer] bothered to do so, progress might have been made"); *Omwenga v. UN Found.*, Civil Action No. 15-cv-786 (TSC), 2019 U.S. Dist. LEXIS 169174, at *31-34 (D.D.C. Sep. 30, 2019) ("Omwenga also claims that UNF's stated reasons for her termination are pretextual. First, she contends UNF deviated from its employee handbook's discipline guidelines. "An **employer's violation of its own procedures can be evidence of pretext**." *Greer v. Paulson*, 505 F.3d 1306, 1319, 378 U.S. App. D.C. 295 (D.C. Cir. 2007); *Jones v. Ottenberg's Bakers, Inc*., 999 F. Supp. 2d 185, 191 (D.D.C. 2013) ("[D]eviations from standard procedures may . . . give rise to an inference of pretext at the summary-judgment stage.") (quotation marks and citations omitted) […] Omwenga was also not given a written warning, decision-making leave, or an investigation suspension, all of which are suggested disciplinary actions if an employee must be disciplined after verbal counseling […] Omwenga also argues that UNF's stated reason for disciplining and ultimately firing her was pretextual, because, although UNF employees had previously complained about her communication and professionalism skills, she was verbally disciplined by Burton two days after she told him and Sonti about her protected activity at lunch. **Other courts have found pretext in retaliation cases when an**

**employer disciplined an employee only after she engaged "in protect[ed] activity, even though [the employee] had not been disciplined for engaging in similar activity prior to her protected activity**." [citing to] *Williams v. Ricoh Americas, Corp.*, 203 F. Supp. 3d 692, 698 (E.D. Va. 2016).)

In short, not only is there no basis for sanctions for the filing of an opposition to a motion for summary judgement, especially when there was overwhelming evidence of the employer's pretextual reason to fire Ali, there is also no basis for sanctions under §1927 for the filing of a single one paragraph notice of appeal. In both instances, our legal position is supported by case law, or more accurately: case laws.  BC's motion for sanctions must be denied *in toto*.

### Conclusion

For all the reasons in here, BC's motion must be denied.

### Respectfully Submitted,

/s/ A.J Dhali
Dhali PC
1629 K. Street. NW. Suite 300.
Washington D.C. 20006
T: (202) 556-1285 F: (202) 351-0518
Email: ajdhali@dhalilaw.com
Monday 8/21/2023

### Certificate of Service

A copy of the foregoing was filed on 8/21/2023 via ECF with copies sent to counsel for BC Architects and this Court.

/s/ A.J Dhali